UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60143-CIV-ALTONAGA/Brown

**CRITICAL RF, INC.,** and **MARITIME
COMMUNICATIONS LAND MOBILE, LLC**,

    Plaintiffs,
vs.

**STEPHEN CALABRESE** and
**CRITICALRFDIRECT.COM, LLC**,

    Defendants.
_____/

## ORDER GRANTING PLAINTIFFS' EX PARTE MOTION
## FOR TEMPORARY RESTRAINING ORDER

**THIS CAUSE** came before the Court upon Plaintiffs, Critical RF, Inc. ("Critical RF") and Maritime Communications Land Mobile, LLC's ("Maritime['s]"), [collectively "Plaintiffs"] Emergency *Ex Parte* Motion for Temporary Restraining Order ("Motion") [ECF No. 5], filed on January 21, 2011. The Court has carefully considered the Motion and pertinent portions of the record.

### I. Introduction

In their Motion, Plaintiffs assert Defendant, Stephen Calabrese, a former employee[1] of Critical RF, and Defendant CriticalRFDirect.com, LLC ("CriticalDirectRF"), Calabrese's company [collectively "Defendants"], are currently soliciting Plaintiffs' customers, directly competing with Plaintiffs, and using Plaintiffs' confidential, proprietary and trade secret information. (*See* Compl. ¶¶ 73–75, 80, 84, 86, 245, and 250 [ECF No. 1]). Plaintiffs contend that in doing so, Defendants are:

---

[1] Calabrese is the former President, founder and former sole shareholder of Critical RF. (*See* Compl. ¶ 29). According to Plaintiffs, Calabrese sold Critical RF to Maritime in March 2006, at which time Calabrese signed an employment agreement to serve as Vice President and Chief Technology Officer of Critical RF. (*See* Compl. ¶¶ 48–49). Calabrese subsequently resigned from his position in March 2010.

(1) infringing Plaintiffs' trademarks in violation of federal law, (2) violating the terms of a non-compete agreement in violation of state law, and (3) exploiting trade secrets misappropriated from Plaintiffs in violation of state law. (*See* Mot. 7); *see also* 15 U.S.C. § 1125(a) & (d); Fla. Stat. §§ 542.335 & 688.003.

Plaintiffs seek (1) "a temporary restraining order prohibiting Defendants from using, canceling, or transferring to any person or entity, other than Plaintiffs, the domain name or address identified in Plaintiffs' Complaint as 'http://criticalrfdirect.com,' or using, registering, or trafficking in any domain name or e-mail address incorporating the Critical RF Mark or any domain name or email address confusingly similar to such mark"; (2) "an order prohibiting Calabrese from violating a non-compete and non-solicitation agreement"; and (3) "an order prohibiting the disclosure of trade secrets, which Calabrese misappropriated while employed by Plaintiffs." (*See* Mot. 7).

## II. Applicable Legal Standard

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). Additionally, a court may only issue a temporary restraining order *without notice* to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party or can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b). Ex parte temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is

necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameida Cnty, etc.*, 415 U.S. 423, 439 (1974).

### III. Discussion

Plaintiffs have filed a Verified Complaint, which contains specific facts indicating Plaintiffs will suffer immediate and irreparable injury if the Motion is not granted. Plaintiffs have put forth evidence that Defendants have solicited and continue to solicit Plaintiffs' clients; misappropriated Plaintiffs' confidential, proprietary and trade secret information; and caused consumer confusion with regard to Plaintiffs' products and services. (*See generally* Compl.). In addition, Plaintiffs maintain Defendants have used Plaintiffs' registered trademarks in an effort to deceive and confuse Plaintiffs' clients.[2] (*See* Compl. ¶¶ 110–181). In support of the allegations, Plaintiffs identify specific clients from whom Defendants have solicited business and provide supporting documentation evidencing the resulting confusion. (*See id.*; Exs. 6–12); (*see also* Mot. 5–7).

Based on Plaintiffs' allegations, there is good cause to believe Defendants have engaged in and are likely to engage in acts or practices that violate:

    a. 15 U.S.C. § 1501, *et seq.* and 28 U.S.C. § 1338 (federal law relating to trademarks);

    b. 15 U.S.C. §1125(d) (the federal Anti-cybersquatting Consumer Protection Act), and 15 U.S.C. §1125(a) (false designation or unfair competition);

    c. Fla. Stat. § 542.335; and

    d. Fla. Stat.§ 688.003.

Plaintiffs have not provided notice to Defendants of the Motion, but have included in their

---

[2] The Eleventh Circuit has acknowledged that "once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim", there is a "presumption of irreparable harm." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008).

Motion a "certificate of efforts to give notice and reasons notice should not be required." (Mot. 27). Plaintiffs indicate they have not provided notice to Defendants due to the likelihood that advance notice of this action will cause Defendants to abscond with or destroy discoverable evidence.

### IV. Conclusion

Based on Plaintiffs' submissions, the undersigned concludes that (1) Plaintiffs' rights with respect to their property, proprietary and confidential information, competitive interests and contract rights are being, and will continue to be, violated by the Defendants unless restrained; (2) Plaintiffs will suffer irreparable harm and loss if the Defendants continue to solicit the patronage of Plaintiffs' clients and maintain, use, disclose or transmit confidential and proprietary information of Plaintiffs; (3) the threatened injury to Plaintiffs outweighs the potential damage the temporary restraining order may cause to the Defendants; and (4) the requested restraining order is not adverse to the public interest. Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion **[ECF No. 5]** is **GRANTED** as follows:

1. Defendants and all persons acting in concert with or on behalf of the Defendants shall be temporarily restrained and enjoined from:

> (a) initiating any further solicitation or contact with any clients of Critical RF and Maritime;
>
> (b) infringing, expressly or by implication, on the Critical RF, Inc. name and the Critical RF Mark, including but not limited to, representing their ownership of and/or interests in either Critical RF, Inc. or the Critical RF Mark in any marketing material or in the sale or distribution of any product;
>
> (c) infringing, expressly or by implication, on the iWalkie® name and trademark including, but not limited to, representing their ownership of and/or interest in iWalkie® or the name iWalkie® or using the iWalkie® name or infringing, by

representing their ownership of, or interest in, or using these other Critical RF Marks; Planet-wide PTT for PC & Mac (Virtual Base Station); LMR/SMR Linking & Backhaul (SiteCAST & PackeTUBE); Interoperability for LAW/EMS/FIRE/MIL (SafetyNET & SiteCAST); Worldwide PTToIP Enterprise Server (CS products) (collectively the "Products") in any marketing material or in the sale or distribution of any product;

(d) Utilizing the name CriticalRFDirect in the promotion and sale of products or services;

(e) Misrepresenting, expressly or by implication, the nature of their products, including but not limited to representing their ownership of and/or interests in Radio over Internet Protocol ("RoIP") interoperability solutions, including iWalkie® (or any other of the Critical RF Products) and their right to market, sell, and/or distribute the Products, including any source code;

(f) Providing others with the means and instrumentalities with which to make, expressly or by implication, orally or in writing, any false or misleading statement or representation of material fact regarding the ownership and/or quality of the Products.

(g) Operating any websites using the domain name www.criticalrfdirect.com or any other derivative of the Critical RF, Inc.'s common law trademark "Critical RF", Critical RF Mark or Products, which would cause consumers' confusion as to the source of such domain name and/or Products;

(h) Being or becoming employed by, consulting for, or otherwise being associated with any competitive service provider in the two way radio industry or any two way radio manufacturer, in the same capacity for which the individual Defendant provided services to Plaintiff, including without limitation Defendant CriticalRFDirect.com, LLC;

(i) Entering into a technical consulting contract that will conflict with the specific interests of the Plaintiffs;

(j) Soliciting, hiring, or retaining, as an employee or independent contractor any employee or former employee of Plaintiffs.

(k) Misappropriating Plaintiff Critical RF's confidential business information, proprietary products, trade names or trademarks, patents or other protected materials including, but not limited to, intellectual property, proprietary information, business plans, customer lists, financial statements, or other materials pertaining to Critical RF's business as a designer and manufacturer of RoIP products;

(l) Using or disclosing Plaintiff Critical RF's valuable and confidential business

information, proprietary products, trade names or trademarks, patents or other protected materials;

(m) Disclosing any trade secrets and/or processes belonging to Critical RF, Inc., including but not limited to the processes related to iWalkie®, SiteCAST, SafetyNET and Virtual Base Station and/or any other Product or valuable and confidential business information, proprietary products, trade names or trademarks, patents or other protected materials;

(n) destroying, erasing, mutilating, concealing, altering, transferring, writing over, or otherwise disposing of, directly or indirectly and in any manner, any documents or records of any kind that relate to the Critical RF name, trademark, and/or Products, advertisements (including, but not limited to, advertisements placed on the World Wide Web or Internet).

2. This Order is issued on **January 24, 2011** at **9:15 a.m.** The Order shall expire on **February 7, 2011 at 9:15** a.m. unless before that time the Court, for good cause, extends it for a like period or the Defendants consent to a longer extension.

3. Defendants shall immediately provide a copy of this Order to each affiliate, marketer, subsidiary, World Wide Web and/or Internet web site hosting company/service, e-mail service provider, sales and/or distribution entity, and any successor, or assign, and shall within five (5) days from the date of receipt of this Order file a sworn statement or declaration attesting that Defendants have complied with this provision of the Order, which statement shall include the names, physical addresses, and e-mail addresses of each such person or entity who received a copy of the Order.

4. Plaintiffs shall give security in an amount that the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained by posting a bond in the amount of $100,000 by **January 26, 2011.** Failure to post a bond shall result in this Order being vacated.

5. Plaintiffs shall serve on each Defendant copies of this Order, the Verified Complaint, the application for temporary restraining order and supporting memorandum, exhibits and other evidence.

Case No. 11-60143-CIV-ALTONAGA/Brown

**DONE AND ORDERED** in Chambers at Miami, Florida this 24th day of January, 2011.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record